# Lee v. Ryan.

*Action of Assumpsit.*

1. *Partnership; when payment of debt to one partner exonerates the debtor.* Where, after the dissolution of a partnership, one of the members, who had been the managing financial partner, collected a debt from a debtor to the firm, and the other partner sues such debtor for the debt thus paid, on the ground that, by arrangement between him and the other partner, to whom payment was made, the debt was to be

[Lee v. Ryan.]

paid to the plaintiff, but of which agreement or arrangement the debtor was ignorant and had no connection therewith, such suit can not be maintained, and the defendant was not liable to the plaintiff for the amount so paid.

APPEAL from the City Court of Decatur.

Tried before the Hon. W. H. SIMPSON.

This was an action of assumpsit brought by the appellee, T. C. Ryan, against the appellant, counting on the common counts, and was commenced on April 29, 1891. The facts disclosed by the bill of exceptions are substantially as follows : On October 5, 1890, the plaintiff, T. C. Ryan, and one R. N. Compton entered into the following agreement : "This indenture made and entered into between R. N. Compton, of the first part, and T. C. Ryan, of the second part, witnesseth : that the party of the first part agrees to furnish logs to run the sawmill near R. N. Compton's house, from 3 to 5 days per week, or in case the party of the first part can't, then and in that case the party of the second part may have said logs furnished by others besides the party of the first part, and party of the first part is to market all lumber, and is to retain 20 cents per 100 feet for one-half of said lumber for hauling to railroad, and the party of the first part is to place all moneys over and above the expenses of running said mill and family supplies as a credit on a certain note or mortgage dated 4th day of October, 1890, and signed by T. C. Ryan. Said party of the second part is to saw all logs furnished on the halves." In the early part of 1891, as testified to by the plaintiff, "Compton became dissatisfied and wanted the mill back, and we could not agree on the terms at which he could get it back. There were other matters between us. We had shipped some ties to a railroad company at Bessemer. These had been shipped through A. A. Oden, and some through the defendant. We submitted to the arbitrators as to the manner in which the proceeds of the timber thus shipped should be divided between us, and who should have the mill and on what terms."

The agreement of arbitration, mentioned above, was not reduced to writing. The arbitrators returned their award on February 23, 1891, which was as follows : "We the undersigned referees, selected and agreed upon by R. N. Compton and T. C. Ryan, to settle a difference

[Lee v. Ryan.]

arising regarding a settlement of certain mill property, after carefully examining into all the particulars, we award the following verdict as follows : R. N. Compton to have the mill and fixtures heretofore purchased of him by T. C. Ryan, by delivering to said Ryan his note and mortgage given for the mill and paying the said Ryan the sum of ninety dollars, out of the proceeds of lumber now shipped, amounting to $248.47. R. N. Compton is to receive of the above amount $34.23, T. C. Ryan to receive $214.23.'' This award was signed by the three arbitrators.

This action was based upon a claim against the defendant, J. E. Lee, for lumber, which he had sold for the plaintiff, Ryan, and Compton, when they were partners. The lumber was sold by the defendant by agreement with the plaintiff and the said Compton, they to pay him a commission for the sales. After the disagreement between Ryan and Compton, and the award by the arbitrators, both Ryan and Compton demanded payment of the amount due from the defendant.

The defendant's testimony tended to show that he did not know of the dissolution of the partnership between Ryan and Compton, and that as Compton had been collecting for lumber sold by him, he, on the demand of Compton, paid the amount claimed by the plaintiff. The other evidence is sufficiently stated in the opinion.

There were many rulings on the evidence and exceptions reserved thereto by the defendant, but under the decision in this case it is not necessary to set them out in detail. Among the several charges asked by the defendant, and to the refusal to give each of which he separately excepted, was the general affirmative charge in his behalf.

There was judgment for the plaintiff, and defendant appeals, and assigns as error the rulings of the trial court, to which exceptions were reserved.

J. L. Brown and E. W. Godbey, for appellant.

D. W. Speake, contra.

HARALSON, J.—Under the agreement between Compton and the plaintiff, they were partners in operating the saw-mill. As between them, each had an in-

[Lee v. Ryan.]

terest in all the moneys to be collected and disbursed; and so far as third persons were concerned, each had the right to collect what was due the firm. As between themselves, by the terms of the agreement, Compton was the managing, marketing and collecting partner, and parties who dealt with the firm, it must be presumed, knew this.

The arbitration, by its terms, as we gather from the written award, was intended and did settle, that R. N. Compton was to have the mill and fixtures theretofore purchased of him by the plaintiff, by delivering to plaintiff his note and mortgage given for the same, and paying to him the sum of ninety dollars out of the proceeds of lumber "now shipped"—as it is expressed—amounting to $248.47. As for any lumber not shipped, or timber hauled and on hand, out of which to make lumber, there was no arbitration or settlement; and the evidence shows, without dispute, that there was lumber left out of the submission and award, and that there were unsettled matters between the parties. Even conceding that the award was valid, and not void on some or all the grounds urged against it by defendant, the arbitration was not a final settlement of the partnership, but simply of those matters submitted, the adjustment of which made a final settlement much more easy. The award contains nothing, which divested either partner of his right and duty to represent the firm in any and all unsettled matters. Treating the partnership, however, for the transaction of any other business, as at an end, each member still had the right to represent the firm in making collections, especially so far as third parties were concerned.

It is undeniable, that by the award Compton had an interest in the proceeds of the lumber that had been shipped, to the extent of $34.23. The award did not provide that the sum was to be paid to Compton from Oden or from defendant. That amount was not precisely equal to that which was owing by either one of them to the firm. If plaintiff by this judgment collects what defendant owes, having collected, as the proofs show, all that Oden owed, he would owe Compton for this $34.23, and would be liable to account to him for it. And so, Compton, having collected the debt here sued for from defendant, is liable to account to plaintiff for the whole,

[Lee v. Ryan.]

or any portion of it to which he may be entitled on set-
tlement. But, surely, defendant is under no obligation
to pay it twice, once to each partner, because they are
in a wrangle with each other, as to which of them it
ought to go. Defendant, so far as the evidence shows,
never consented to pay to plaintiff. Indeed, it shows to
the contrary, according to plaintiff's own version of the
matter. He states that he made two demands on defen-
dant for the amount he owed. On the first interview, he
was informed by him, he did not have the money. On
the second demand, he still said he did not have it, and
informed him that Compton was demanding its payment
to him, when plaintiff told him, not to pay it to Comp-
ton, that he, plaintiff, was entitled to it. At this inter-
view, instead of agreeing to pay it to plaintiff, defendant
gave him a written statement to the effect, that he had
allowed R. N. Compton and plaintiff to cut and ship in
his name a lot of oak ties to the B. B. & B. R. R. Co., at
Bessemer, for which he would owe them, when he re-
ceived the money from said railroad company, $55, more
or less.

This was the only notice that defendant had that the
plaintiff claimed this money. It is not shown that he,
defendant, had any connection or anything to do with
said arbitration, or even knew of the award. The defen-
dant himself swears : "I did not know anything of the
state of affairs between Ryan and Compton, at the time,
[he paid Compton the money], nor how much each had
received from other sources, nor how much each was to
receive of the proceeds in my hands. I never had any
notice that Compton had agreed to surrender his rights
to collect the money due the firm. On the contrary,
Compton steadily insisted on his right to make such col-
lection—I never did agree that I would pay a part of the
money in my hands to Compton and a part to Ryan."

Under all the evidence, the case seems to be one where,
after the dissolution of a firm, one of the members, who
had been the managing financial partner, collected a debt
from a party who was owing the firm, and the other part-
ner notwithstanding sues the debtor for the debt thus
paid, on the ground, that by arrangement between him
and the other partner, to whom payment was made, the
debt was to be paid to plaintiff, of which agreement or
arrangement, the debtor was ignorant, and with which

[Bowling v. Crook.]

he had no connection.    It is difficult to see on what principle, such a suit can be maintained.—Parsons on Part., § 287 ; 17 Am. & Eng. Encyc. of Law, 1127.

The view we have felt constrained to take of the case, makes it unnecessary to review any other of the many questions with which it is burdened.

The general charge as requested by the defendant, should have been given.

Reversed and remanded.